UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BENNY SPENCER,                                        Case No. 1:13-cv-454

        Plaintiff,                                    Barrett, J.
  v.                                                      Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Benny Spencer filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. The Commissioner filed a response, to which Plaintiff filed no reply. As explained below, the ALJ's finding should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on July 29, 2010, alleging disability beginning July 31, 2009 based upon a combination of mental and physical impairments. His application was denied initially and upon reconsideration, and he timely requested an evidentiary hearing.

On September 12, 2012, Plaintiff, through his representative, appeared and testified at a hearing in Cincinnati, Ohio held before Administrative Law Judge ("ALJ") David A. Redmond. (Tr. 27-40). An impartial vocational expert also appeared and

testified. On October 19, 2012, ALJ Redmond issued an unfavorable written decision. (Tr. 12-21).

The ALJ determined that Plaintiff has the following severe impairments: "degenerative joint disease right hip, degenerative joint disease right knee, obesity, coronary artery disease, congestive heart failure, and sleep apnea." (Tr. 15). However, the ALJ held that Plaintiff does not have an impairment or combination of impairments that would meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appx. 1. (Tr. 17). Instead, he found that Plaintiff retains the residual functional capacity ("RFC") to perform the full range of sedentary work. (Tr. 17). Importantly, the ALJ went on to find that Plaintiff was capable of performing his past relevant work as a data entry clerk and/or mortgage loan processor.[1] (Tr. 20). For that reason, the ALJ determined that Plaintiff was not disabled. (*Id.*). The Appeals Council denied Plaintiff's request for further review; therefore, the ALJ's decision remains as the final decision of the Commissioner.

Plaintiff does not contest the number or types of severe impairments found by the ALJ. Instead, Plaintiff argues that the ALJ should have found him to be presumptively disabled under Grid Rule 201.06 of the medical-vocational Guidelines, because he was 59 years of age at the time of his hearing and can no longer perform his past relevant work. In contrast to the ALJ's analysis, Plaintiff argues that his past relevant work was not within the sedentary level, but instead was performed at a higher exertional level. Plaintiff alternatively argues that the ALJ should have accepted the RFC assessment of

---

[1] While the ALJ's opinion expressly referenced only the job of data entry clerk, the ALJ's analysis implicitly also includes the mortgage loan processor job, as generally performed at the sedentary level.

2

his treating physician, Dr. Potter, who concluded that Plaintiff was not capable of even sedentary work and therefore was disabled.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

3

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §404.1512(a).

### B. Specific Errors

#### 1. Past Relevant Work

Plaintiff worked at National City Bank from 2001 through 2009, indicating on his disability application that his position was that of "auditor," and entailed reviewing loan documentation, as well as data entry. The vocational expert described one of Plaintiff's two positions at the bank as a "mortgage loan processor," who "audited loans." Plaintiff immediately affirmed that description with an unsolicited "yes." (Tr. 39). The VE testified that mortgage loan processor work "is generally performed at a sedentary

4

exertional level," and is considered "skilled" under the Dictionary of Occupational Titles under a specific listed job of "mortgage loan processor."  (Tr. 20, 39).  The VE similarly testified that data entry work is "generally performed at the sedentary exertional level," although it is considered only "semi-skilled."  (*Id.*).

Plaintiff argues that the ALJ "misclassified" his prior work, based upon Plaintiff's testimony that he performed his particular bank jobs at a higher exertional level than sedentary.  For example, when queried about whether his data entry position involved any lifting or carrying, Plaintiff answered affirmatively.  He explained that out of 40 people in his department, he was one of only two men, and that he and the other male were, by virtue of their gender, expected to perform "the job of making sure the copier machines and stuff always stayed full of paper."  He explained:

> I'd have to take my, my chair which was on wheels and I'd go to the stock room to get a, you know, get the paper.  I would have to get one or two boxes at a time and build it back up and then load those, you know, it was constantly going all day long, six or seven copier machines, big ones and it, it would get, it would get a little bit painful, you know, going back as far as trying to haul paper.  The other guy was a lot younger than me and I tried my best to get him to do it as much as possible, I'm like give me a break.

(Tr. 38-39).  On his written Work History Report, Plaintiff described his "entry level computer" position as requiring "data entry," but also as requiring unloading computers for inspection, and loading paper into the copy machines.  (Tr. 184-185).  Even though he sat for 6 hours per day during those duties, he reported that he sometimes lifted up to 50 pounds.  (Tr. 185).  Plaintiff additionally reported on the same form that when he worked as a mortgage loan processor from 2001-2008, he sat for as few as 4 hours per day.  In that job, he stated he was still required to lift and carry up to 20 pounds when he retrieved boxes from shelves and refilled paper in the copier.  (Tr. 186).

5

The ALJ expressly recognized the discrepancy between the VE testimony and Plaintiff's report, particularly with respect to the data entry position. Noting that Plaintiff "testified he performed this [data entry] work at a higher exertional level," the ALJ nevertheless concluded that Plaintiff could perform the job of data entry clerk "as it is generally performed throughout the national economy" at the sedentary level. (Tr. 20). The ALJ specifically relied upon Soc. Sec. Ruling 82-61. That ruling explains that if a former job held by a claimant was performed at a higher exertional level than what is generally required for the job by other employers throughout the national economy, such that the claimant can no longer perform his precise former job, he will not be found to be disabled so long as he can perform the functional demands and duties of the same job "as generally required." (Tr. 20). Based on the uncontested VE testimony, the ALJ concluded that the VE's testimony "is consistent with" the DOT description of "data entry clerk." (Tr. 20). In addition to specifically determining that Plaintiff could perform work as a data entry clerk "as generally required," the ALJ pointed out that Plaintiff had testified that he stopped that work in July 2009 not because of any physical or mental impairment, but instead because his temporary employment contract had expired.

Plaintiff calls it "unfortunate" that his prior counsel did not challenge the VE's testimony that his prior work was "sedentary" when she was given the opportunity to do so. Ms. Carnath, listed as Plaintiff's "attorney" on the hearing transcript, declined the ALJ's express invitation to cross-examine the VE. Represented by new counsel in this proceeding, Plaintiff asserts that, "on information and belief," Ms. Carnath was not a licensed attorney but instead worked as a paralegal in the office of his prior counsel.

Plaintiff "anticipate[s]" that the Commissioner "may well argue that since Mr. Spencer was represented at his hearing, he cannot now complain about his representative's failure to cross examine" the VE. Nevertheless, he cites the possibility that he was represented by a paralegal as grounds for remand for "further development" on this issue. (Doc. 10 at 6).

The undersigned does not find the status of Plaintiff's prior representative to be grounds for remand. There is no question that Plaintiff and his representative were provided ample opportunity to question the VE at the time of the hearing and failed to do so then, or immediately following the hearing in arguments presented to the Appeals Council.[2] Plaintiff cannot escape waiver merely by arguing that his prior counsel was inadequate. *See Baranich v. Barnhart*, 128 Fed. Appx. 481, 490 (6th Cir. 2005); *McClanahan v. Com'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006). There is a statutory right, but no *constitutional* right to counsel at a social security hearing. Waiver would be too easily avoided, and remand too quickly gained, if a plaintiff could succeed merely by obtaining new counsel to represent him in federal court. Thus, "[f]ederal courts have rejected arguments by other social security claimants who allege ineffectiveness or malpractice by their counsel in the representation of a claimant." *Smith v. Colvin*, 2013 WL 2551951 at *19 (N.D. Ohio, June 7, 2013)(additional citations omitted).

Plaintiff concedes that SSR 82-61, cited by the ALJ, ordinarily would bar his claim so long as he can perform his prior relevant work as it is generally performed. *See also Studaway v. Sec'y of HHS*, 815 F.2d 1074, 1076 (6th Cir. 1987)("the relevant

---

[2]Plaintiff's attorney, not Ms. Carnath, submitted a post-hearing brief.

Case: 1:13-cv-00454-MRB-SKB Doc #: 14 Filed: 08/08/14 Page: 8 of 13 PAGEID #: 682

inquiry is whether Studaway could return to his past type of work rather than his past job."). To avoid that result, he argues that his data entry position was "misclassified and was not truly a straight data entry and/or audit position," but instead should have been classified under the DOT as "file clerk," or "copy room attendant," "or the like." (Doc. 10 at 7). However, Plaintiff described his position in terms that closely align with that of a data entry clerk, the position found by the VE. (Tr. 184-185). A vocational expert is uniquely qualified to determine how jobs are categorized or classified in the DOT. *See* SSR 00-4p, 2000 WL 1898704 at *2-3. As Defendant points out, Plaintiff's contention that his job was misclassified is unconvincing since the description of a "file clerk" contained in the DOT bears little resemblance to the duties that Plaintiff described, and there is no job in the DOT called "copy room attendant."

Plaintiff does not similarly argue that the "mortgage loan processor" position was misclassified, except for asserting that he performed it at the "light" exertional level. Aside from Plaintiff's testimony ascribing the loading of copier paper to his gender role, there was no evidence that loading paper was part of Plaintiff's actual job description. He did not testify, for example, that his employer explicitly directed the two male employees to perform that duty, or that he told his employer that he could not perform the task, or that he asked other female employees to assist him. When the VE characterized his position as "mortgage loan processor…when he audited loans," (Tr. 39), Plaintiff immediately interjected "yes" without prompting. (*Id.*). Thus, it was reasonable for the ALJ to conclude, based on the VE's testimony and SSR 82-61, that Plaintiff could perform his past relevant work both as a data entry clerk and as a mortgage loan processor "as generally performed" at the sedentary level.

### 2. Treating Physician Opinion

In his second assertion of error, Plaintiff argues that the ALJ should have accepted the RFC assessment of his treating physician, Dr. Ira Potter. Dr. Potter opined that Plaintiff's ability to sit was limited to 2 ½ to 3 hours total in an 8 hour workday, with not more than 1 hour at a time without interruption. Dr. Potter further opined that Plaintiff could only stand and/or walk for 30 minutes at a time. (Tr. 454). Dr. Potter's opinion would necessarily preclude all sedentary work, including Plaintiff's past relevant work. The ALJ rejected the opinion as "less than credible because the weight of the evidence of record, including additional evidence received at the hearing level and claimant's own testimony, shows that the claimant is not limited in his ability to sit as required when doing sedentary work." (Tr. 18).

The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)). Thus, the treating physician rule requires the ALJ

to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009). If an ALJ does not give controlling weight to a treating physician's opinion, he or she must articulate the weight given to the opinion, and provide "good reasons" for that decision. *Id.* (additional citations omitted). In addition, the opinions of examining consultants are generally entitled to greater weight than are the opinions of non-examining consultants. *See* 20 C.F.R.§1527(c)(1); *see also Gayheart v. Com'r*, 710 F.3d 365, 375-376 (6th Cir. 2013).

Plaintiff argues that the ALJ's stated reasons for rejecting Dr. Potter's opinions were not good reasons. He first criticizes the ALJ for assessing Plaintiff's own testimony as inconsistent with Dr. Potter's opinions. He argues that the ALJ should have interpreted his testimony as consistent with lying down most of the day, because Plaintiff testified that on a typical day, he would get up, take his medicine, and then get in a "recliner" chair where he would watch TV or read, and that he would also "get on the computer for a few minutes." (Tr. 34). Plaintiff argues that since he testified that he was in a "recliner," the ALJ should have construed his testimony as equivalent to stating that he spent most of his day in a "reclined position." Plaintiff additionally cites to testimony that he naps between 3 and 4 times per week. (Tr. 37).

Although Plaintiff argues that his testimony was consistent with Dr. Potter's RFC opinions, Plaintiff's interpretation of his prior testimony is neither the only construction of that testimony, nor consistent with the record as a whole. Obviously, a recliner chair may be placed in an upright or a reclining position. On the record presented, substantial evidence exists to support the ALJ's conclusion that Plaintiff was not in fact

10

lying down most of his day. For example, in a Function Report dated 8/16/2010, Plaintiff indicated that his ability to sit has <u>not</u> been affected by his illnesses, injures, or conditions. (Tr. 181). Aside from the Function Report indicating no limitations on his ability to sit, at the hearing Plaintiff described performing a number of activities, "the majority of [which] …are typically done while sitting, i.e. watching television, reading a book, using a computer and working puzzles. (Tr. 18, citing Tr. 180). Plaintiff reads the Bible, checks e-mails, watches TV, sits on the porch (presumably not in his recliner), works puzzles, and eats three meals per day. (Tr. 177). He indicated no difficulties with personal care or hygiene, and that he is able to prepare simple meals, do laundry, fold clothes, drive a car, and go shopping twice a week for an hour at a time. (Tr. 178-179). He also reported playing "games at home with friends on Friday evenings" as well as with a friend on the computer. (Tr. 180). He particularly enjoys Monopoly and Dominoes. (*Id.*). He attends church twice per week, sings in the choir, and is able to pay bills, and use a checking account. (*Id.*).

Aside from the inconsistencies between Dr. Potter's RFC limitations and Plaintiff's own reported activities, Dr. Potter provided no explanations for his extreme limitations, other than listing Plaintiff's diagnoses of osteoarthritis and degenerative joint disease in his knees and hips. (Tr. 454). However, Dr. Potter's clinical records did not support the extreme limitations that he reported. For example, in July 2012, Dr. Potter noted that Plaintiff's "degenerative joint disease has had a satisfactory course [of treatment] with fair, overall, symptom control." (Tr. 587). Despite some tenderness and decreased range of motion, Plaintiff had normal "hip, knee, and ankle stability," a normal gait, and no difficulty standing. (Tr. 588). He took only over-the-counter medication for

11

pain relief. (Tr. 423). The ALJ specifically noted that he was required to consider the "supportability" of Dr. Potter's opinion. (Tr. 18).

In addition, the ALJ noted that Dr. Potter's opinion was inconsistent with the opinions of two non-examining consulting physicians, both of whom opined that Plaintiff could sit for 6 hours in an 8 hour workday.[3] (Tr. 46-47, 58). A third examining consultant observed in January 2011 that Plaintiff was comfortable when sitting and opined that he could perform "at least a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects," which report was consistent with sedentary work. (Tr. 18, citing Tr. 423-425). Finally, the ALJ noted that Plaintiff's reports to other treating physicians concerning his symptoms and/or their intensity were inconsistent, particularly with respect to his alleged shortness of breath with activity, chest pains, and alleged degenerative joint pain. (Tr. 19).

In sum, the ALJ provided "good reasons" for giving little weight to Dr. Potter's RFC opinions.

### III. Conclusion and Recommendation

Finding no basis for reversal or remand, accordingly, **IT IS RECOMMENDED** that Defendant's decision be **AFFIRMED** and that this case should be **CLOSED**.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[3] In finding Plaintiff to be restricted to sedentary work, the ALJ partially credited Plaintiff's testimony over that of these two consulting opinions. Dr. Das had opined that Plaintiff could perform light work, and Dr. Albert's opinions were consistent with medium level work.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BENNY SPENCER,                                                      Case No. 1:13-cv-454

        Plaintiff,                                    Barrett, J.

v.                                                                 Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).